STEVEN G. SKLAVER (237612)
KALPANA SRINIVASAN (237460)
AMANDA BONN (270891)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Fax:  (310) 789-3150
Email:  ssklaver@susmangodfrey.com
Email:  ksrinivasan@susmangodfrey.com
Email:  abonn@susmangodfrey.com

*Attorneys for Defendant*
*Alta-Dena Certified Dairy, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEVEN M. IKEDA, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SWISS II, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  11-9686 DDP (FFMx)<br><br>**CLASS ACTION**<br><br>**DEFENDANT ALTA-DENA CERTIFIED DAIRY, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br><br>Date:  February 27, 2012<br>Time:  10:00 a.m.<br>Place: Courtroom of the<br>          Hon. Dean D. Pregerson<br>          Courtroom 3 - 2nd Floor |

2159535v1/012862

# Table of Contents

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................ 2

   A.   State Law Exemptions From Meal Period And Overtime Laws Depend On The Content Of The CBAs. ................................................................................................... 2

      1.   Second Meal Period Waiver Provisions. .......................................... 2

      2.   The Commercial Drivers' Meal Period Exemption. ........................ 3

      3.   The Collective Bargaining Agreement Overtime Exemption. ......... 4

   B.   Plaintiff's CBA Contains Ambiguous Provisions Concerning Second Meal Periods And Overtime Payment. ........................................................................ 5

      1.   Second Meal Period Provisions. ...................................................... 5

      2.   Overtime Provisions. ........................................................................ 5

III.    ARGUMENT ............................................................................................... 10

   A.   Section 301 Of The LMRA Completely Preempts State Law Claims Requiring Interpretation Of The CBA. ................................................................. 10

   B.   Determining Whether Plaintiff (And His Union) Waived His Second Meal Periods Requires Interpretation Of The CBA. ...................................... 12

   C.   The Court Cannot Resolve Plaintiff's First Meal Period And Overtime Claims Without Interpreting The CBA's Overtime Provisions. ................................ 13

      1.   *Firestone* Compels The Conclusion That Plaintiff's Meal Period And Overtime Claims Are Preempted. ............................................... 15

      2.   *Gregory* Is Inapposite Because The CBA's Overtime Provisions Are Susceptible Of Multiple Interpretations, Resolution Of Which Is Necessary To Resolve Plaintiff's Claims. ........................................................................................ 16

      3.   Alta-Dena Need Not Prove At This Time Which Interpretation Of The CBA Is Correct, Only That Interpretation Will Be Required. ................................ 18

IV.    CONCLUSION ........................................................................................... 19

1

## Table of Authorities

2

### CASES

3

*Adkins v. Mireles,*
    526 F.3d 531 (9th Cir. 2008) ................................................................... 11

4

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202 (1985) ..................................................................... 11, 15

5

*Audette v. Int'l Longshoremen's & Warehousemen's Union,*
    195 F.3d 1107 (9th Cir. 1999) ................................................................. 18

6

*Balcorta v. Twentieth Century-Fox Film Corp.,*
    208 F.3d 1102 (9th Cir. 2000) ................................................................. 12

7

*Burnside v. Kiewit Pac. Corp.,*
    491 F.3d 1053 (9th Cir. 2007) ................................................................. 12

8

*Cathcart v. Sara Lee Corp.,*
    No. 09-5748 MMC, 2011 WL 5981849, at *4 (N.D. Cal. Nov. 30, 2011) ............. 8

9

*Cedars-Sinai Med. Ctr. v. Shewry,*
    41 Cal. Rptr. 3d 48 (App. Div. 2006) .................................................. 10, 14

10

*Children's Hosp. Med. Ctr. of N. Cal. v. Cal. Nurses Assoc.,*
    283 F.3d 1188 (9th Cir. 2002) ................................................................. 14

11

*Cinelli v. Sec. Pac. Corp.,*
    61 F.3d 1437 (9th Cir. 1995) ................................................................... 14

12

*Cohn v. Petsmart, Inc.,*
    281 F.3d 837 .......................................................................................... 1

13

*Cramer v. Consol. Freightways, Inc.,*
    255 F.3d 683 (9th Cir. 2001) ................................................................... 12

14

*Dahl v. Rosenfeld,*
    316 F.3d 1074 (9th Cir. 2003) ................................................................. 17

15

*Firestone v. S. Cal. Gas Co.,*
    219 F.3d 1063 (9th Cir. 2000) ........................................................... 15, 16

16

*Franchise Tax Bd. of Cal. v. S. Cal. Constr. Laborers Trust.,*
    463 U.S. 1 (1983) ................................................................................... 11

17

*Geo. Expeditions, Inc. v. Estate of Lhotka,* 599 F.3d 1102 (9th Cir. 2010) ............. 18

18

*Gregory v. SCIE, LLC,*
    317 F.3d 1050 (9th Cir. 2003) ........................................................... 12, 16

19

*Hess v. Ford Motor Co.,*
    27 Cal. 4th 516 (2002) ............................................................................ 10

20

*Lingle v. Norge Div. of Magic Chef, Inc.,*
    486 U.S. 399 (1988) ......................................................................... 11, 13

21

*Livadas v. Bradshaw,*
    512 U.S. 107 (1994) ......................................................................... 12, 13

22

*Metropolitan Life Ins. Co. v. Taylor,*
    481 U.S. 58 (1987) ................................................................................. 11

23

*O'Halloran v. Univ. of Wash.,*
    856 F.2d 1375 (9th Cir. 1988) ................................................................... 4

24

25

26

27

28

iii

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ...........................................................................................1

### STATUTES

§ 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ...............passim

28 U.S.C. § 1331 ...............................................................................................10

28 U.S.C. § 1441(a) ...........................................................................................10

Cal. Labor Code § 510 .............................................................................4, 8, 14, 17

Cal. Labor Code § 512 .................................................................................passim

Cal. Labor Code § 514 .................................................................................passim

Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §§ 14501 ....................1

### OTHER AUTHORITIES

2010 Cal. Legis. Serv. Ch. 662 (A.B. 569) (West) ........................................................3

8 Cal. Code Regs. § 11090 ...............................................................................2, 13

2159535v1/012862

## I.     INTRODUCTION

Plaintiff is a commercial driver whose terms of employment are governed by a collective bargaining agreement ("CBA") between Teamsters Local Union No. 63 and Swiss II, LLC ("Swiss II"), a predecessor-in-interest to the defendant Alta-Dena Certified Dairy, LLC's ("Alta-Dena").[1]  (Declaration of Marjorie Ball ("Ball Decl.") ¶ 1.)[2]  The gravamen of Plaintiff's Complaint is that "[f]or at least four years prior to the filing of this action and through to the present," Defendant "consistently" deprived Plaintiff of meal periods to which he was entitled under California law.  (Compl. ¶ 1.)  In addition, Plaintiff also claims that he was denied overtime pay that he was due under California law.  (*Id.* ¶ 13(c).)  But whether Plaintiff is entitled to bring claims for missed meal periods or overtime—or rather whether he is exempt pursuant to those state law provisions—is entirely dependent on the Court's interpretation of key, ambiguous provisions of the CBAs that have governed Plaintiff's employment during the alleged liability period.  As a result, Plaintiff's meal period and overtime claims are both completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and his motion for remand based on a lack of federal question jurisdiction must be denied.[3]

---

[1] As set forth in the Notice of Removal, Swiss II merged with and into Defendant Alta-Dena Certified Dairy, LLC ("Alta-Dena").  Although Swiss II was initially the only named defendant in this case, Plaintiff amended the complaint to add Alta-Dena as a defendant.  (Notice of Removal ¶¶ 4-5 .)

[2]  In addition to the evidence submitted with its Notice of Removal, Alta-Dena hereby submits additional evidence via the Declaration of Marjorie Ball.  The Court may properly consider evidence submitted in opposition to a motion for remand "as an amendment to [the] notice of removal."  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 n.1 (9th Cir. 2002); *see also Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) (noting "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits").

[3] Plaintiff devotes much of his brief to refuting the argument that the Federal Aviation Administration Authorization Act of 1994 ("FAAA"), 49 U.S.C. §§ 14501 *et seq.*, preempts his state law claims.  While Alta-Dena preserves the right to argue at summary judgment that the FAAA preempts and thus defeats Plaintiff's state law claims, it declines to proffer FAAA preemption as a basis for federal question

## II.   BACKGROUND

### A.   State Law Exemptions From Meal Period And Overtime Laws Depend On The Content Of The CBAs.

#### 1.   Second Meal Period Waiver Provisions.

Labor Code section 512 states that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." Cal. Labor Code § 512(a).  However, the statute also contains an exception:  "[I]f the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."  *Id.*   The governing order of the Industrial Welfare Commission ("IWC") echoes the statutory language.  IWC Order No. 9 ("Order Regulating Wages, Hours and Working Conditions in the Transportation Industry"), at ¶ 11(B), 8 Cal. Code Reg. § 11090.  Neither Labor Code section 512 nor IWC Order No. 9 mentions anything about the form or content the waiver must take, although the same IWC Order erects more stringent requirements regarding waivers of other meal period rules.  *See* IWC Order No. 9, at ¶ 11(C) (providing that waiver of right to "off duty" meal periods must be made "by written agreement" that "shall state that the employee may, in writing, revoke the agreement at any time").

If the Court interprets Plaintiff's CBA—which provides for a single, half-hour "lunch period" and a single, half-hour deduction from the time clock each day—to waive his right to a second meal period under section 512 and IWC Order No. 9, Plaintiff would not be entitled to the relief he seeks under California law.

---

(… cont'd)
jurisdiction here because the complete preemptive effect of § 301 is, by itself, sufficient to establish subject matter jurisdiction.  Plaintiff also briefly addresses CAFA in its remand papers, but CAFA was not the basis of removal at this stage and, for that reason, was also never addressed in the parties' meet and confer efforts regarding this motion to remand.

2

(*See* Agreement Between Swiss II, LLC and Teamsters Locals 63, 166, 186, and 630 ("CBA II"), at Appendix "A" ¶¶ 1(d), 12, attached to the Ball Decl. as Exh. B.) Removal is thus proper because resolution of Plaintiff's claim for missed second meal periods requires the Court to interpret whether the above provisions of the CBA mean that only one meal period—"the" half-hour lunch period—need be provided.

### 2.      The Commercial Drivers' Meal Period Exemption.

Although California law imposes various requirements on employers to provide meal periods to their employees, *see* Cal. Labor Code § 512, the California legislature recently amended the law in order to "exempt from these provisions . . . commercial drivers . . . if those employees are covered by a valid collective bargaining agreement containing specified terms, including meal period provisions."  2010 Cal. Legis. Serv. Ch. 662 (A.B. 569) (West).  Effective January 1, 2011, California law exempts from its meal break requirements those commercial drivers whose valid collective bargaining agreements provide for "the wages, hours of work, and working conditions of employees," as well as "for meal periods for those employees, final and binding arbitration of disputes concerning the application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate."  Cal. Labor Code §§ 512(e), (f)(2).

If Plaintiff's CBA meets the requirements in section 512(e) of the Labor Code, he would not be entitled to seek redress for missed meal periods after January 1, 2011 under California law, but rather would be limited to filing a grievance pursuant to the CBA.  As set forth more fully below, the question whether the CBA meets these requirements can only be answered by interpreting certain provisions of the CBA in light of relevant extrinsic evidence.  It is for that reason, in addition to

3

the second meal period waiver interpretation issue, that this action is subject to federal question jurisdiction.

### 3. The Collective Bargaining Agreement Overtime Exemption.

California's overtime law contains a similar, but even broader exemption. Section 510 of the Labor Code provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee," while "[a]ny work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay . . . ." Cal. Labor Code § 510. However, "[s]ection 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement" if the agreement "expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514. Once again, if Plaintiff's CBA meets these requirements, he would not be entitled to seek overtime in accordance with section 510, as he alleges in his complaint, but rather would be limited to filing a grievance pursuant to the CBA. Cal. Labor Code § 514. Whether or not the Plaintiff's CBA fulfills these requirements, as described further below, depends upon interpretation of the CBA.[4]

---

[4] Plaintiff has informed Alta-Dena that he intends to file a motion to seek leave to file an amended complaint that, among other things, seeks to dismiss his overtime claim without prejudice but maintains the meal break claims. On January 26, 2012, Alta-Dena and Plaintiff entered into a stipulation not opposing the request for leave to file an amended complaint, but for some unknown reason, Plaintiff has not yet filed the stipulation or otherwise sought leave. Plaintiff's remand motion does not mention the proposed amended complaint, and for good reason: "In determining the existence of removal jurisdiction, based upon a federal question, the court must look to the complaint as of the time the removal petition was filed. Jurisdiction is based on the complaint as originally filed and not as amended." *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1379 (9th Cir. 1988). In any event, the preemption of Plaintiff's meal break claims suffices to establish jurisdiction.

4

Plaintiff's entitlement to relief under his state law meal period and overtime claims hinges on analyzing and interpreting the terms of the CBA to determine their meaning and, in light of their meaning, whether Plaintiff is exempt.

### B. Plaintiff's CBA Contains Ambiguous Provisions Concerning Second Meal Periods And Overtime Payment.

#### 1. <u>Second Meal Period Provisions.</u>

Paragraph 12 of Appendix "A" to Plaintiff's CBA is titled "Lunch Period" and provides that "[t]he lunch period shall be one-half (½) hour, which shall be deducted from the time shown on the time clock." (*See* Ball Decl. Exh. B, Appx. A ¶ 12.)   In addition, various CBA provisions concerning wages also provide for a single, one-half hour deduction for the lunch period each day.  (*See id.* ¶ 1(d) (noting overtime hours shall be calculated "exclusive of one-half (½) hour lunch period").)   Plaintiff's union bargained for meal periods during negotiations concerning the CBA, and the result was a CBA that provides for "[t]he lunch period" and a single, half-hour deduction from time, even when overtime hours are worked.  What these provisions mean and whether they constitute an effective waiver of second meal periods in accordance with Labor Code section 512(a) and IWC Order No. 9 are questions that require interpretation of the CBA, and thus Plaintiff's claim for missed second meal periods is preempted by the LMRA.

#### 2. <u>Overtime Provisions.</u>

Yet another issue that also requires the interpretation of the CBA is whether Plaintiff is exempt from the meal break and overtime laws.  With respect to the commercial driver's exemption to the meal break laws and the collective bargaining agreement to the overtime laws, the face of Plaintiff's CBA clearly provides for wages, hours of work, and working conditions of employees.  (*See generally* Ball Decl. Exh. B.)  It provides for a half-hour "lunch period," as well as "final and binding" arbitration over "any and all controversies which may arise . . . ."  (*Id.* ¶¶

34.1-34.8; *id.* Appx. A ¶ 12.)[5]  And Mr. Ikeda's regular hourly rate of pay pursuant to the CBA is nearly three times the state minimum wage rate of $8 per hour, Cal. Labor Code § 1182.12.  (*See* Ball Decl. ¶ 6; *id.* Ex. B Appx. A ¶ 1(h).)  Thus, all but one of the exemptions' requirements are clear from the face of the CBA.  *See* Cal. Labor Code §§ 512(e)-(f)(2), 514.

It is unclear however, absent interpretation, whether the CBA expressly provides "premium wages for all overtime hours worked," so as to establish that Plaintiff is exempt from California overtime requirements and meal break requirements after January 1, 2011.  Cal. Labor Code §§ 512(e)-(f)(2), 514.  One provision of the CBA governing Plaintiff's wages appears to provide for payment of a premium wage rate for overtime hours worked "in excess of nine (9) hours per day," rather than for "[a]ny work in excess of eight hours in one workday," Cal. Labor Code § 510(a).  (Ball Decl. Exh. B Appx. A ¶ 1(d).)  The CBA provides for a five, eight-hour day workweek totaling forty hours for all employees.  (Ball Decl. Exh. B at Article 10.1.)   Article 3.1 of the CBA is a placeholder that states "[s]pecific working conditions and the regular rates of pay for Wholesale Route Foreperson Relief Drivers, Route Salesperson and Truck Drivers, are set forth in Appendix "A" attached hereto and included herein the same as if set out in full at this place."  (Ball Decl. Exh. B at Article 3.1.)  Appendix A, in turn, provides in relevant part:

> **1.**     **WAGES, HOURS, OVERTIME, NIGHT PREMIUM AND WORKWEEK. ROUTE DRIVER, RELIEF DRIVERS, ROUTE FOREMAN, AND ICE CREAM DRIVER (STOREDOOR DEL.)**
>
> (c)     The working day shall commence when the route driver registers on the time clock ready for duty at the time designated by the Employer as the starting

---

[5] Once the jurisdictional issues in this case have been resolved, Alta-Dena may request that the Court decide a motion to compel arbitration pursuant to the terms of the CBA and expressly reserves the right to do so here.

> time, and shall finish when the route driver again registers on the time clock after completion of all duties required of him by the Employer . . . .
>
> (d)     Anytime [sic] computed in accordance with No.1 (c) above in excess of **nine (9) hours per day** (exclusive of one-half (½) hour lunch period) shall be paid at the overtime rate of one and one half (1 ½) times the hourly rate.
>
> (e)     Any time, not in excess of **nine (9) hours per day** computed in accordance with No.1 (c) above, in excess of forty (40) hours per week (exclusive of two (2) separate one half (½) hours for lunch periods) shall be paid at one and one-half (1 ½) times the hourly rate. For purposes of this Article, time worked on any regular day shall be considered as not less than seven (7) hours.

(Ball Decl. Exh. B, Appx. A ¶ 1 (emphases added).)

If the Court interprets these "nine (9) hour" provisions literally, without considering any contrary extrinsic evidence, the provision arguably would not provide for premium wages for "all overtime hours worked," meaning the mealtime and overtime exemptions may not apply.  *See* Cal. Labor Code §§ 512, 514. However, there is other evidence that the Court should consider in determining whether the CBA was truly intended only to provide premium wages for hours exceeding nine in one day, or whether the parties in fact intended for the CBA to premium wages for all hours worked in excess of eight per day.

*First*, it is the company's policy to pay Plaintiff the premium wages provided for in the CBA for time worked in excess of *eight hours*, rather than nine, per day or forty per week.  (Ball Decl. ¶ 7 (emphasis added).)  *Second*, the Court also would have to construe and interpret the above language in light of nearly identical language in another, contemporaneous CBA.  The nine-hour figure appears not only in Appendix A to Plaintiff's current CBA ("CBA II"), but also in Appendix A to

7

the prior CBA ("CBA I") between Ross Swiss Dairies[6] and Teamster's Local No. 63.  That earlier agreement was signed by Neil Finerty on behalf of Ross Swiss Dairies in January 2005.  (Ball Decl. Exh. A.)  During the same two-week period, however, Mr. Finerty also signed a separate collective bargaining agreement governing the drivers at another Ross Swiss Dairy branch located in San Diego ("San Diego CBA").  (Ball Decl. Exh. C.)  That agreement contained a nearly identical Appendix A, which similarly provided that overtime compensation would be paid for hours "in excess of nine (9) hours per day . . . ."  (*Id.* Appx. A ¶ 1(d).)  Critically, however, the San Diego CBA provided a *forty-five hour* alternative workweek schedule for Route Drivers consisting of five, *nine-hour days*.[7]  (*Id.* at Article 10.1.)  As a result, Appendix A to that agreement provided for premium wages to be paid for overtime hours worked in excess of nine per day or forty-five per week in accordance with the alternative workweek schedule.  (*Id.* Appx. A ¶ 1 (d)-(e).)

Unlike the San Diego CBA, CBA I—which was signed during the same month by the same corporate representative—does *not* provide for a five, nine-hour day alternative workweek.  Instead, it provides the usual five, eight-hour day workweek.  (Ball Decl. Ex. A at Article 10.1.)  A comparison between CBA I and

---

[6] Ross Swiss Dairies was a predecessor-in-interest to Swiss II, which has since merged with and into Alta-Dena.  *See* n.1, *supra*; *see also* Ball Decl. ¶ 3.

[7] Section 510 of the Labor Code defines an "[a]lternative workweek schedule" as "any regularly scheduled workweek requiring an employee to work more than eight hours in a 24-hour period." Labor Code section 500(c).  Section 510—which provides for an eight-hour workday, a forty-hour workweek, and related overtime requirements—does not apply to "[a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement." Cal. Labor Code § 500(c).  In other words, the San Diego CBA provides premium wage rates for all overtime hours worked, because overtime is defined as hours exceeding the five, nine-hour day alternative workweek schedule for which the employer and employees collectively bargained.  *See Cathcart v. Sara Lee Corp.*, No. 09-5748 MMC, 2011 WL 5981849, at *4 (N.D. Cal. Nov. 30, 2011) ("[I]f the parties to a CBA agree to an alternative workweek schedule, the CBA, rather than the first part of § 510(a)(1), will define what work constitutes 'overtime hours' for purposes of § 514 [overtime exemption].").

8

the contemporaneous San Diego CBA appears to show that while some changes were made to Appendix A when including it in CBA I to account for the different schedule—for example, a forty-hour per week overtime trigger is included rather than the San Diego Appendix A's forty-five hour trigger, and eight hours of overtime pay for work on days off is included rather than the San Diego Appendix A's nine hours of overtime pay for work on days off—the "nine (9) hours per day" of overtime language was, for some reason, not changed accordingly:

| Appendix A in Plaintiff's CBA I | Appendix A in San Diego CBA |
|---|---|
| (d)   Anytime   [sic]   computed   in accordance with No.1 (c) above in excess of **nine (9) hours** per day (exclusive of one-half ( ½ ) hour lunch period) shall be paid at the overtime rate of one and one half (1 ½) times the hourly rate. | (d)    Any time computed in accordance with No.1 (c) above in excess of **nine (9) hours** per day (exclusive of one-half [½] hour lunch period) shall be paid at the overtime rate of one and one-half times (1 ½ x) the hourly rate. |
| (e)    Any time, not in excess of **nine (9) hours per day** computed in accordance with No.1 (c) above, in excess of **forty (40) hours per week** (exclusive of two (2) separate one half (½) hours for lunch periods) shall be paid at one and one-half (1½) times the hourly rate.  For purposes of this Article, time worked on any regular day shall be considered as not less than seven (7) hours. | (e)    Any time, not in excess of **nine (9) hours per day** computed in accordance with No.1 (c) above, in excess of **forty-five (45) hours per week** (exclusive of 2 1/2 hours for lunch periods) shall be paid at one and one-half times (1½ x) the hourly rate.  For purposes of this Article, time worked on any regular day shall be considered as not less than seven (7) hours. |
| (f)   If a Route Driver, Relief Driver, Route Foreman, or Ice Cream Driver is called in to work on either of his designated days off, he shall have **at least eight (8) hours work** made available to him or shall be paid a minimum of **eight (8) hours pay** at the overtime rates . . . . | (f)   If a Route Driver, Relief Driver, Route Foreman, or Ice Cream Driver is called in to work on either of his designated days off, he shall have at least **nine (9) hours work** made available to him or shall be paid a minimum of **nine (9) hours pay** at the overtime rate . . . . |

(Ball Decl. Exh. A, Appx. A ¶ 1(d)-(f); *id.* Exh. C, Appx. A ¶ 1(d)-(f).)

9

A California court presented with this evidence would need to determine whether the "nine (9) hour" language was intended to be included in Plaintiff's CBAs or whether the CBA was intended to provide overtime compensation for time in excess of eight hours per day in accordance with its five, eight-hour per day schedule.  In doing so, the court would need to interpret the parties' intent and the meaning of the agreement in light of relevant, extrinsic evidence, including that discussed above.  *See, e.g.*, *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 525 (2002) (holding parol evidence could be considered in determining whether provision in written agreement resulted from mutual mistake) (citation omitted); *see also Cedars-Sinai Med. Ctr. v. Shewry*, 41 Cal. Rptr. 3d 48, 64 (Ct. App. 2006) ("A written contract may be reformed when, through a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, the contract fails to express the intention of the parties.  A court may consider extrinsic evidence in determining whether a mutual mistake has occurred.") (internal quotation marks and citation omitted).

Thus, it would be impossible for a court to evaluate whether Plaintiff is properly subject to the state laws on meal periods and overtime he invokes without first construing the provisions of the CBA in light of relevant extrinsic evidence and interpreting whether the CBA requires payment of time and one-half for all hours in excess of eight, or, rather, all hours in excess of nine in one day.

## III.   ARGUMENT

### A.   Section 301 Of The LMRA Completely Preempts State Law Claims Requiring Interpretation Of The CBA.

Removal jurisdiction exists over actions filed in state court which could have been filed in federal court originally.  28 U.S.C. § 1441(a).  This case could have been filed in federal court because the claim is one "arising under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331.  Although generally such

10

jurisdiction exists only when a federal question appears on the face of the plaintiff's "well-pleaded complaint," Congress "may so completely pre-empt a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character" and may thus be removed. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). The LMRA is a statute that has been found to preempt completely certain state law claims, thus providing for federal question jurisdiction notwithstanding the absence of a federal question on the face of the plaintiff's complaint: "[T]he preemptive force of [LMRA] § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of Cal. v. S. Cal. Constr. Laborers Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks and citation omitted). Plaintiffs are therefore wrong when they suggest that LMRA preemption cannot provide a basis for federal question jurisdiction because it also happens to be raised as an affirmative defense. Pls.' Mem. at 8.

To the contrary, § 301 vests federal courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Federal courts have interpreted § 301 as "mandating resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 & n.3 (1988). Accordingly, § 301 completely preempts all "state-law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,'" thereby permitting such suits to be removed to federal court. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). On the other hand, § 301 does not preempt claims alleging violations of "state law substantive rights that apply without regard

11

to a CBA and can be resolved without interpreting a CBA." *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003).

In *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007), the court set forth an analytical framework for determining whether a state law claim is preempted by the LMRA. *First*, the Court must "inquir[e] whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and [the court's] analysis ends there." *Id.* *Second*, if "the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (citation omitted). "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id.* The key distinction here is whether the court will need to "look to" the CBA or "interpret" the CBA: the latter results in complete preemption while the former does not. *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122-24 (1994). The rationale for finding § 301 preemption where state law claims require interpretation of a CBA is to further the LMRA's "policies of promoting arbitration and the uniform interpretation of collective bargaining agreement provisions," as "any claim the resolution of which requires the interpretation of a collective bargaining agreement presents some risk to the policy of uniformity if state law principles are employed in that interpretation, even if the claim is not one for breach of contract." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

## B.   Determining Whether Plaintiff (And His Union) Waived His Second Meal Periods Requires Interpretation Of The CBA.

Plaintiff's claim for missed second meal periods cannot be resolved without interpreting the CBA. California law expressly provides that second meal periods

may be waived.  Plaintiff's CBA provides that "[t]he lunch period"—not "lunch periods"—shall be one-half hour long.  (Ball Decl. Exhs. A, B at Appx. A ¶ 12.)  In addition, the CBA provides that a single, one-half hour deduction shall be made from the time clock each day, even when overtime hours are worked.  (Ball Decl. Exhs. A, B at Appx. A ¶ 1(d)).  Plaintiff takes the position, however, that he (and his union) did not waive second meal periods.   (*See, e.g.*, Compl. ¶¶ 13(b), 24.)  This competing, disputed construction of the CBA's provisions regarding second meal periods requires interpretation of the CBA.

*Livadas* and *Lingle*, relied upon by plaintiff, are inapposite because those two cases concluded that interpretation of collective bargaining agreements was not necessary to determine whether there was a sufficiently clear waiver to overcome statutory no-waiver provisions.  *Livadas*, 512 U.S. at 125; *Lingle*, 486 at 409 n.9.  Here, the right to second meal periods is expressly made waivable by section 512 of the Labor Code and IWC Order No. 9.  *See* Cal. Labor Code § 512; 8 Cal. Code Regs. § 11090.

Because the Court will need to interpret whether the cited provisions of the CBA waived Plaintiff's second meal periods, federal jurisdiction over Plaintiff's claim exists.

**C.     The Court Cannot Resolve Plaintiff's First Meal Period And Overtime Claims Without Interpreting The CBA's Overtime Provisions.**

In addition to the second meal period issue, Plaintiff's overtime and first meal break claims also require the Court not only to "consult[] and then appl[y]" the CBA, as Plaintiff argues, Pls.' Mem. at 10, but rather to interpret it.  To invoke California's meal and overtime protections, Plaintiff must not be subject to the commercial driver exemption to the meal period laws or to the collective bargaining agreement exemption to the overtime laws.  Cal. Labor Code §§ 512(e)-(f)(2), 514.  However, the Court cannot evaluate whether the CBA meets one of the key

13

1    elements of those two exemptions—by providing for "premium wages for all

2    overtime hours worked"—without first interpreting the meaning of the overtime

3    provisions in Appendix A to the CBA.

4         The "nine (9) hour" overtime language at first blush appears not to provide

5    premium wages for "all overtime hours worked," as section 510 defines overtime as

6    "[a]ny work in excess of eight hours in one workday . . . ."  Cal. Labor Code §

7    510(a).  But there is evidence—namely in the form of the company's payment

8    practices and circumstances surrounding the adoption of similar language in a

9    parallel agreement—that a California court would consider in interpreting whether

10    the CBA's "nine (9) hour" language accurately reflects the intent of the parties.  *See*

11    *Shewry*, 41 Cal. Rptr. 3d at 64 (holding extrinsic evidence properly considered in

12    determining whether contractual provision resulted from mutual mistake); *see also*

13    *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1444-45 (9th Cir. 1995) (discussing

14    various federal courts' applications of mutual mistake, scrivener's error, and other

15    contract interpretation principles to collective bargaining agreements and ERISA

16    plans).  Indeed, courts may properly "review[] extrinsic evidence as part of [their]

17    effort to construe a collective bargaining agreement," looking to "the bargaining

18    history, the context in which the contract was negotiated, the interpretation of the

19    contract by the parties, and the conduct of the parties bearing upon its meaning."

20    *Children's Hosp. Med. Ctr. of N. Cal. v. Cal. Nurses Assoc.*, 283 F.3d 1188, 1195

21    (9th Cir. 2002).

22         A state court considering Plaintiff's claim could not answer the question

23    whether the CBA exempts Plaintiff from the reach of California's meal and

24    overtime requirements without first (1) considering all relevant evidence (both

25    intrinsic and extrinsic) and (2) interpreting whether the CBA was intended to

26    provide premium wages for hours worked in excess of eight or nine hours per day.

27    Cal. Labor Code §§ 512(e)-(f)(2), 514.  Were this case remanded, the state court

28    would (improperly) be forced to apply California legal principles to interpret this

14

provision of the CBA in light of extrinsic evidence of the parties' intent before evaluating whether the meal and overtime exemptions' requirements are satisfied. Yet having state courts determine the meaning of collective bargaining agreements is precisely the outcome that § 301 preemption is meant to avoid. *Lueck*, 471 U.S. at 211 ("Were state law allowed to determine the meaning intended by the parties in adopting a particular contract phrase or term [in a CBA] . . . [t]he parties would be uncertain as to what they were binding themselves . . . ."). As a result, Plaintiff's claim for missed meal periods after January 1, 2011, and for missed overtime are preempted by § 301 of the LMRA.

### 1. *Firestone* Compels The Conclusion That Plaintiff's Meal Period And Overtime Claims Are Preempted.

This case is on all fours with *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000). There, the Ninth Circuit held that the plaintiff's California state law overtime claim was completely preempted by § 301. The employer "argue[d] that the claim is foreclosed by an exemption in the California overtime law for employees who are covered by a collective bargaining agreement that provides, in relevant part, for 'premium wage rates' for overtime work." *Id.* at 1064. Because the CBA contained a formula that may or may not have provided for overtime rates higher than regular hourly rates depending on the calculation, "[t]he district court held that plaintiffs' claim was preempted by the LMRA because resolution of the essential dispute between the parties about the applicability of the California exemption required interpretation of the complex pay and overtime pay provisions in the collective bargaining agreement." *Id.* The Ninth Circuit affirmed, agreeing with the lower court "that one could not determine whether plaintiffs were receiving a 'premium wage rate' for overtime under the collective bargaining agreement—making them exempt from California overtime laws—without interpreting that agreement to determine, *inter alia*, what the regular rate was." *Id.* at 1066.

2159535v1/012862

Here, as in *Firestone*, the Court must first interpret what Appendix A's overtime provisions mean in order to evaluate whether the CBA satisfies the requirements of the applicable meal and overtime exemptions. There are conflicting interpretations of the provisions—one that would suggest only overtime hours in excess of nine per day are paid a premium wage, and another that would suggest the parties to the agreement intended for it to provide premium wages for all overtime hours worked in excess of eight per day—that must be resolved before the applicability of the exemptions can be evaluated.

> **2.      *Gregory* Is Inapposite Because The CBA's Overtime Provisions Are Susceptible Of Multiple Interpretations, Resolution Of Which Is Necessary To Resolve Plaintiff's Claims.**

For that reason, the *Gregory* decision that Plaintiff cites, Pls.' Mem. at 15, is inapposite. *Gregory*, 317 F.3d at 1052. In *Gregory*, the plaintiff performed work for the defendant "on different [television and motion picture] productions exceed[ing] in the aggregate eight hours in one work day and forty hours in one work week." *Id.* at 1053. On the one hand, the defendant wished to argue that it was exempt from statutory overtime requirements because, among other things, the collective bargaining agreement provided premium wages for "all overtime hours worked," in accordance with section 514. *Id.*; *see also* Cal. Labor Code § 514. On the other hand, however, the defendant argued that the collective bargaining agreement did not require it to "lump together different productions to calculate overtime hours." *Id.* Thus, the defendant's argument was self-defeating: the defendant first argued that interpretation of the collective bargaining agreement was required to determine whether the plaintiff was exempt from the overtime laws, but the interpretation the defendant advanced—that the agreement did not require payment of "all overtime hours worked"—would have precluded the application of that very exemption. *Id.*; *see also* Cal. Labor Code § 514. As a result, the court held that "[t]he issue here is not *how* overtime rates are calculated but whether the

16

*result* of the calculation complies with California law, i.e., whether Gregory is paid at premium wage rates for '[a]ny *work* in excess of eight hours in one workday and *any work* in excess of 40 hours in any one work week,' as required by California law." *Gregory*, 317 F.3d at 1053 (quoting Cal. Labor Code § 510) (citation omitted) (emphases in original).

Here, by contrast, there are ambiguous terms in the CBA that must be interpreted *first* before a court could resolve whether Plaintiff's claims are exempted from and not cognizable under California law. If the CBA is interpreted literally to mean that the employer need not pay overtime until the covered employees have worked more than nine (rather than eight) hours in one day, the CBA arguably may not meet the meal and overtime exemptions' requirements. If, on the other hand, the Court considers available extrinsic evidence of the parties' intent—including the structure of the CBA itself; contemporaneous, related writings; the bargaining history behind the CBA; and the parties' subsequent conduct under the CBA, as evidenced by Plaintiff's own payroll records—it could conclude that the CBA was in fact intended to provide for premium wage compensation for all hours worked in excess of eight per day. Such a finding would mean the relevant exemptions' requirements are met, and Plaintiff's sole avenue for relief for missed meal periods and overtime would be under the CBA. Cal. Labor Code §§ 512(e)-(f)(2), 514.

Courts have found state law claims preempted by the LMRA under similar circumstances. *Dahl v. Rosenfeld*, 316 F.3d 1074, 1078 (9th Cir. 2003) ("The resolution of Dahl's claims depends on the scope of the CBA's prohibition on the transfer of work to non-Union businesses and an analysis of whether Jennaro's actions were sufficient to trigger a breach of the agreement. If the CBA does not prohibit Jennaro's actions, then Dahl's claims are invalid. Because Dahl's claims necessarily require the court to interpret a provision of the CBA in order to resolve Dahl's claims, Dahl's claim is preempted by § 301."); *Audette v. Int'l*

17

*Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) ("A cause of action that requires a court to ascertain whether the CBA in fact placed an 'implied duty of care' on a union and the 'nature and scope of that duty' involves the interpretation of the CBA and hence is preempted.").

### 3. Alta-Dena Need Not Prove At This Time Which Interpretation Of The CBA Is Correct, Only That Interpretation Will Be Required.

The Court need not now resolve which interpretation of the CBA's overtime provisions is correct: this case is in its infancy, the parties will be entitled to conduct discovery concerning the CBA's bargaining history, the parties' course of conduct, and other relevant facts bearing on the meaning of ambiguous provisions. It is not Alta-Dena's burden to prove at this time that any one interpretation is correct, nor to offer all of the evidence that might theoretically be available to support an alternate interpretation of the CBA. Alta-Dena's only burden at this juncture is to show that it is more likely than not that interpreting the CBA will be required in order to adjudicate Plaintiff's state law meal and overtime claims. *Cf. Geo. Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102 (9th Cir. 2010) (holding removing party must prove subject matter jurisdiction by a preponderance of the evidence). Because the evidence Alta-Dena proffers demonstrates that there are conflicting interpretations of the overtime provisions in Appendix A of the CBA— the resolution of which is necessary in order to adjudicate Plaintiff's state law claims—Alta-Dena has carried its burden of demonstrating that § 301 completely preempts Plaintiff's claims for missed second meal periods, missed meal periods after January 1, 2011, and missed overtime, thus establishing federal question jurisdiction.

///

///

///

18

1

**IV.    CONCLUSION**

2          For each of the foregoing reasons, Alta-Dena respectfully requests that

3   Plaintiff's Motion to Remand be denied.

4

5   Dated:  February 6, 2012                  STEVEN G. SKLAVER
                                              KALPANA SRINIVASAN
6                                             AMANDA BONN
                                              SUSMAN GODFREY L.L.P.

7

8                                             By:  */s/ Amanda Bonn*

9                                                 Amanda Bonn
                                              *Attorneys for Defendant Alta-Dena*
10                                            *Certified Dairy*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19